[No. 13321.  *En Banc.*  August 13, 1917.]

HEWITT LOGGING COMPANY, *Respondent*, v. NORTHERN PACIFIC RAILWAY COMPANY, *Appellant*.[1]

CARRIERS—OVERCHARGES—RECOVERY—CONDITIONS PRECEDENT—LIMITATIONS—STATUTES. Rem. Code, § 8626-91, providing that all claims concerning transportation overcharges shall be filed with the public service commission within two years from the time the cause of action accrues, is an exclusive remedy to the extent that it requires a submission of the action to the public service commission within two years as a condition precedent to the right to maintain an action; and it is not unconstitutional or beyond the power of the legislature, as curtailing the common law, as declared by Const., art. 12, § 15, compelling fairness in freight charges, to provide an inquiry by a board skilled in the science, as a prerequisite to the institution of a suit and within a definite time; since there is no abolition of the remedy and no vested right in procedure.

Appeal from a judgment of the superior court for Pierce county, Easterday, J., entered January 15, 1916, in favor of the plaintiff, upon overruling a demurrer to the complaint, in an action to recover money paid.  Reversed.

*Geo. T. Reid, J. W. Quick,* and *L. B. da Ponte*, for appellant.

*Gordon & Easterday* and *J. E. Belcher*, for respondent.

*Higgins & Hughes* (*Hyman Zettler*, of counsel), *amicus curiae.*

CHADWICK, J.—This is an action to recover for an overcharge, collected by appellant from respondent's assignor,

[1]Reported in 166 Pac. 1153.

for freight upon sawlogs hauled from Satsop, Washington, to Hoquiam. A greater rate was charged than for a like service given to others between Mack, Washington, and Hoquiam, a greater distance on the same line and in the same direction. The freight was hauled under the published tariffs of the road.

After a demurrer had been filed, the complaint, which alleged no more than the overcharge, was amended, appellant consenting thereto, by adding the following:

"All of which shipments were covered by appropriate bills of lading issued by defendant, which bills of lading were alike in form and one of which is hereto attached, marked Ex. C, and made a part hereof."

The demurrer being renewed upon the grounds (1) that the complaint did not state a cause of action, and (2) that the action was not commenced within the time prescribed by law, was overruled upon both grounds. Judgment for want of an answer was entered against appellant.

Appellant relies on Rem. Code, § 8626-91, which provides that, where complaints are made to the public service commission concerning overcharges, they shall be made within two years:

"All complaints concerning overcharges shall be filed with the commission within two years from the time the cause of action accrues, and the petition for the enforcement of the order shall be filed in the court within one year from the date of the order of the commission."

And upon Rem. Code, § 165:

"An action for relief not hereinbefore provided for shall be commenced within two years after the cause of action shall have accrued."

It is admitted that the cause of action arose more than two years, and less than six years, before the commencement of the action; the position of the appellant being that the public service commission law affords an exclusive remedy, or, if not, the action is barred under the general statute of limitations. Rem. Code, § 165.

We find that the remedy afforded by the statute, while not in the strict sense of the term exclusive, is to the extent that it requires a submission of all controverted questions arising out of freight rates and freight charges mandatory, and that one aggrieved by an overcharge must first submit his petition to the public service commission within two years after his cause of action has accrued, as a condition precedent to the right to maintain an action, which is in form a common law action, modified only in so far as the statute touches the measure of recovery and the time within which the action may be brought.

The pertinent sections of the act of 1911, which is known as the "Public Service Commission Law," Laws 1911, ch. 117, p. 538, are as follows:

"Sec. 22.   No common carrier, subject to the provisions of this act, shall charge or receive any greater compensation in the aggregate for the transportation of persons or of a like kind of property, for a shorter than for a longer distance over the same line in the same direction, the shorter being included within the longer distance.   .   .   ." Rem. Code, § 8626-22.

"Sec. 80.   Complaint may be made by the commission of its own motion or by any person or corporation,   .   .   . by petition or complaint in writing, setting forth any act or thing done or omitted to be done by any public service corporation in violation, or claimed to be in violation, of any provision of law or of any order or rule of the commission:
.   .   .

"Upon the filing of a complaint, the commission shall cause a copy thereof to be served upon the person or corporation complained of, which shall be accompanied by a notice fixing the time when and place where a hearing will be had upon such complaint.   The time fixed for such hearing shall not be less than ten days after the date of the service of such notice and complaint, excepting as herein provided." Id., § 8626-80.

Section 81 provides for a hearing and

"At the conclusion of such hearing the commission shall make and render findings concerning the subject-matter and

facts inquired into and enter its order based thereon. . . . A full and complete record of all proceedings had before the commission, or any member thereof, on any formal hearing had, and all testimony shall be taken down by a stenographer appointed by the commission, and the parties shall be entitled to be heard in person or by attorney. In case of an action to review any order of the commission, a transcript of such testimony, together with all exhibits introduced, and of the record and proceedings, in the cause, shall constitute the record of the commission." Id., § 8626-81.

"Sec. 91. When complaint has been made to the commission concerning the reasonableness of any rate, fare, toll, rental or charge for any service performed by any public service company, and the same has been investigated by the commission, and the commission shall determine that the public service company has charged an excessive or exorbitant amount for such service, the commission may order that the public service company pay to the complainant the amount of the overcharge so found, with interest from the date of collection.

"If the public service company does not comply with the order for the payment of the overcharge within the time limited in such order, suit may be instituted in any court of competent jurisdiction to recover the same, and in such suit the findings and order of the commission shall be *prima facie* evidence of the facts therein stated. If the complainant shall prevail in such action, he shall be allowed a reasonable attorney's fee, to be fixed and collected as part of the costs of the suit. All complaints concerning overcharges shall be filed with the commission within two years from the time the cause of action accrues, and the petition for the enforcement of the order shall be filed in the court within one year from the date of the order of the commission." Id., § 8626-91.

And §§ 104 and 111 (Rem. Code, §§ 8626-104, 8626-111), to which we shall hereafter refer.

The right to recover for discriminations in freight rates had not always been acknowledged by the courts. To save any controversy over the question of the right of a shipper who had suffered an extortion in the way of an unequal charge, or who had paid a greater charge for a short haul

than had been charged another for a long haul, the people put in the constitution a declaration prohibiting the practice.

"Persons and property transported over any railroad . . . shall be delivered at any station . . . at charges not exceeding the charges for the transportation of persons and property of the same class, in the same direction, to any more distant station . . . Const., art. 12, § 15.

Respondent insists that this section reaffirms the common law. Its argument logically assumes that it is beyond the power of the legislature to take from a shipper any of the remedies incident to the common law, and that it can. assert its right to recover in an action upon the bill of lading which is a contract bringing the limitation for such actions within Rem. Code, § 157, which provides for a limitation of six years on—

"(2)   An action upon a contract in writing, or liability express or implied arising out of a written agreement;"

But we think that such conclusion does not follow.

To avoid unjust discrimination, unlawful rebates, and favoritism theretofore prevailing, the several states, as well as the Congress of the United States, have adopted regulatory statutes. In *State ex rel. Oregon R. & Nav. Co. v. Railroad Commission*, 52 Wash. 17, 100 Pac. 179, the then commission law was attacked because it had provided a procedure then unknown to the law and procedure prevailing in the courts and quasi judicial tribunals of the country. In passing upon the objection, it was said:

"It is true that the forms of law and procedure under which the commission is acting are not in all respects like the forms and procedure governing other courts; and in the language of many of the cases cited by the counsel for appellant, and repeated by the appellants themselves in their arguments, in some respects 'it is not a proceeding under the forms and with the machinery provided by the wisdom of successive ages.' But it occurs to us that it makes no difference whether it is a proceeding under the forms and with the machinery provided by the wisdom of successive ages, or

whether it is under the powers and proceedings provided by
this age.   Law is a progressive science, and must necessarily
regard the changing conditions of society and of the busi-
ness of the country, and the legislature and courts of today
ought certainly to be as well qualified to provide machinery
for the guidance of a commission as was the law-making
power two hundred years ago.   The essential idea does not
take cognizance of the antiquity of the powers and machinery
under which the commission is acting, but of the question
whether, under such powers and the working of such ma-
chinery, the respective legal rights of the carriers and the
people are preserved.   A careful examination of the whole
act, we think, refutes the statements made by the attorneys
for appellant that the law is cunningly devised for the pur-
pose of preventing railroads from obtaining just judgments,
and repels the presumption that the commission provided
for by the legislature is appointed for the purpose of oppres-
sing railroad companies.   We think, on the contrary, the
presumption must be that the commission will act with fair-
ness towards all parties."

No better statement of the spirit, purpose, and object of
such laws has ever been written.

We may grant that the constitution declares the common
law, but it does not follow that the legislature may not oc-
cupy its acknowledged field and define procedures and fix
limitations upon the assertion of the right preserved.   The
"Public Service Commission Law" does not assume to take
away the common law right of action.   The legislature has
accepted the declaration of the constitution at its full worth
and has, by a complete statute, endeavored to avoid all of
the annoyances and collateral questions attending the asser-
tion of the common law remedy, such as the reasonableness
of the rate in and of itself, and its reasonableness when com-
pared to another rate, the character and extent of service,
the attending circumstances, and the measure of recovery,
which it is said was never defined at common law (*Pennsyl-
vania R. Co. v. International Coal Co.*, 230 U. S. 184), and
which it is said with equal gravity was as certain as a re-

covery can be upon an implied contract to pay money. *Sullivan v. Minneapolis & R. R. Co.*, 121 Minn. 488, 142 N. W. 3, 45 L. R. A. (N. S.) 612.

To define procedure, to make a condition precedent, and to fix a limitation does not destroy the force of the constitution. On the contrary, a law so providing makes it efficient, certain, and uniform in its operation. The substantive right remains; that is all the citizen can insist upon, for it is held under authority without limit that no litigant has a vested right in procedure so long as his right of action is not abolished.

In the Minnesota case, *supra*, the court held that the public service commission law of that state was not exclusive, and that the common law right as well as common law remedies were not repealed by it. The court reminded itself of the rule as laid down by Chief Justice White in *Texas & Pac. R. Co. v. Abilene Cotton Oil Co.*, 204 U. S. 426, 437:

"We concede that we must be guided by the principle that repeals by implication are not favored, and indeed that a statute will not be construed as taking away a common law right existing at the date of its enactment, unless that result is imperatively required; that is to say, unless it be found that the preexisting right is so repugnant to the statute that the survival of such right would in effect deprive the subsequent statute of its efficacy; in other words render its provisions nugatory."

And proceeded to hold that, whereas the act did not provide a civil remedy, the shipper might pursue his common law remedy independent of the statute. But here the procedure is not repugnant to, but is in aid of, the common law right. The statute exempts itself from the rule of the Minnesota case by providing in terms:

"If the public service company does not comply with the order for the payment of the overcharge within the time limited in such order, suit may be instituted in any court of competent jurisdiction to recover the same, . . ." Laws 1911, ch. 117, p. 600, § 91 (Rem. Code, § 8626-91).

To say that it is beyond the power of the legislature to provide for an inquiry by a board skilled in the technical science of freight and passenger rates as a prerequisite to the institution of a suit, and within a definite time, would be to assert the indefensible principle that the legislature could not pass any law of procedure where a right of action existed at common law.

That the legislature intended to save all substantive rights is made plain by the act itself. Section 104 provides:

"This act shall not have the effect to release or waive any right of action by the state or any person for any right, penalty or forfeiture which may have arisen or may hereafter arise under any law of this state; . . ." Rem. Code, § 8626-104.

And § 111 evidences the legislative intent that all actions brought after the passage of the act should be governed by the terms of the act in so far as it defined procedure. Section 111 (Id., § 8626-111) saves only pending actions, while § 104 saves all substantive rights then accrued or thereafter to accrue.

The object of the law was to fix a certain procedure applicable to all cases and to avoid the confusion that would follow a holding for appellant, that is, two limitations upon one cause of action—a limitation of two years and one thereafter, if a petition were filed with the commission, and one of six years if respondent's theory be accepted.

Not much has been said by the court upon the subject of freight rates and common law remedies, but all that has been said is consistent with the principle now asserted. *State ex rel. Oregon R. & Nav. Co. v. Railroad Commission, supra; State ex rel. Goss v. Metaline Falls Light & Water Co.,* 80 Wash. 652, 141 Pac. 1142. Goss and wife petitioned the court for a writ of mandamus to compel a public service corporation to furnish their place of business with water at a rate alleged to be the customary rate for like service to others. A demurrer was interposed and sustained

upon the ground that the public service commission had exclusive jurisdiction to entertain the petition in the first instance. The ruling of the court was sustained. That to so provide by statute, was not considered by the court as a denial of remedy, for it said:

"A careful examination of this act will disclose a legislative intention to invest the public service commission with exclusive original jurisdiction to hear, pass upon and determine the questions here presented. The public service commission, as constituted, is authorized to examine in the first instance and pass upon these problems. Appellants should seek their remedy before that tribunal."

The case of *Northern Pac. R. Co. v. Carstens Packing Co.*, 92 Wash. 243, 158 Pac. 721, is relied on. That case arose under a rule of the interstate commerce commission upon a subject resting in rule and regulation as distinguished from right and remedy, and throws no light upon the present controversy.

Respondent contends that the court has held in *Lilly Co. v. Northern Pac. R. Co.*, 64 Wash. 589, 117 Pac. 401, that the court has jurisdiction to entertain a suit independent of the statute. That case is readily distinguished and, when properly understood, does not impinge any of our present conclusions. The court there dealt with the right of the parties as they were defined by the interstate commerce law. The jurisdiction of the courts to entertain a suit to recover illegal discriminations in freight rates without first resorting to the interstate commerce commission was sustained upon, and by reference to, the twenty-second section of the act to regulate commerce.

"Nothing in this act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies." U. S. Comp. Stats. 1901, pp. 3170, 3171.

The act to regulate commerce preserves existing rights and remedies; the public service commission law preserves

rights but not remedies, except as to cases then pending. Laws 1911, ch. 117, pp. 609, 611, §§ 104, 111 (Rem. Code, §§ 8626-104, 8626-111).

If the common law be the growth of the ages, it follows that it must grow with the ages. The common law is not an inflexible code, but a comprehensive enumeration of principles sufficiently elastic to meet the social development of the people. It is in a state of "constant improvement and development in keeping with advancing civilization and new conditions of society." Holmes, Common Law, pp. 1-5, 36 *et seq.*

It was the boast of the common law that it afforded a remedy for every wrong. Its remedies were not always adequate. Sometimes, because of changing conditions, they become burdensome. This was the evident condition when the problems of transportation first engaged the attention of the courts. To repeat, the people wisely asserted the common law right to compel fairness of freight charges in their constitution, and left it to the legislature to define a procedure that would, while preserving the right, make recovery certain in amount and tend to reduce the volume of litigation. In so doing, it worked no hardship on any one by making provision that a claim should be filed with the commission and within a certain time, it being nowhere asserted that the time limited is unreasonable.

The claim for the overcharge was not made by respondent's assignor within the time fixed by law. The condition precedent to the right to sue is nonexistent. The complaint does not state a cause of action.

Reversed, and remanded with directions to dismiss.

Ellis, C. J., Holcomb, Morris, Mount, Main, Fullerton, and Parker, JJ., concur.