INTERIOR AIRWAYS, INC., Plaintiff,

v.

WIEN ALASKA AIRLINES, INC., Civil Aeronautics Board, Alexander Dunham, William J. Madden, Defendants.

State of Alaska, Intervenor.
No. F–11–60.

United States District Court
D. Alaska,
at Fairbanks.
Oct. 25, 1960.

Charles E. Cole, Fairbanks, Alaska, for plaintiff.

George M. Yeager, U. S. Atty., Fairbanks, Alaska, and George S. Leonard, U. S. Dept. of Justice, Washington, D. C., for defendant Civil Aeronautics Board.

Ralph E. Moody, Atty. Gen., of Alaska, for Intervenor State of Alaska.

1. Sec. 401(a) provides "No air carrier shall engage in any air transportation unless there is in force a certificate issued by the Board authorizing such air carrier to engage in such transportation."

Before BARNES, Circuit Judge, and SOLOMON and HODGE, District Judges.

PER CURIAM.

Plaintiff brings this action to restrain and enjoin the Wien Alaska Airlines, Inc., and the Civil Aeronautics Board from proceeding in a cause filed by Wien before the Board seeking to enforce the provisions of Sec. 401(a) of the Federal Aviation Act of 1958 (Sec. 1371, Title 49 U.S.C.A.) 1 or otherwise regulating or attempting to regulate intrastate air transportation within the State of Alaska.

Plaintiff's complaint alleges in substance that Wien Alaska Airlines filed a complaint before the Board seeking to enforce the provisions of the Federal Aviation Act, and citing the plaintiff to appear before such Board. It alleges that the plaintiff was engaged solely in intrastate air commerce in Alaska, that the Federal Aviation Act does not authorize the regulation of intrastate air commerce within the state and that any Act of Congress attempting to make such intrastate air transportation subject to the Act is in violation of the Constitution of the United States.

Jurisdiction of the court is based upon Secs. 1331 and 1337, Title 28 U.S.C.A. A three-judge court has been constituted upon plaintiff's motion for a preliminary injunction pursuant to the provisions of Sec. 2284, Title 28 U.S.C.A. A temporary restraining order was issued by District Judge Hodge on September 20, 1960, to prevent irreparable injury. The order was thereafter modified to permit the Board to proceed with the hearing before it but to otherwise restrain the enforcement of the Act. Plaintiff has moved for summary judgment. The defendant Board and its officers and agents have moved to dismiss the complaint, as-

Sec. 101 of the Act [49 U.S.C.A. § 1301(21) (a)] defines interstate air transportation as including commerce "between places in the same Territory or possession of the United States * * *"

110

serting that this court is without jurisdiction because plaintiff failed to exhaust its administrative remedies, has an adequate remedy at law, and because the complaint fails to raise a substantial constitutional question. The State of Alaska has intervened in support of the defendants' motion to dismiss.

The case is now before the court on plaintiff's motions for a preliminary injunction and for summary judgment and upon the motions of defendants and the intervenor to dismiss plaintiff's complaint. It appears from the pleadings and the statements of counsel that there are no issues of fact to be determined.

■■■ We first hold that the failure of plaintiff to exhaust its administrative remedies does not bar this action. Administrative agencies have power to determine constitutional applicability as distinguished from the constitutionality of legislation itself.

"If * * * an administrative proceeding might leave no remnant of the constitutional question, the administrative remedy plainly should be pursued. But where the only question is whether it is constitutional to fasten the administrative procedure onto the litigant, the administrative agency may be defied and judicial relief sought." Public Utilities Commission of State of California v. United States, 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470; 3 Davis, Administrative Law Treatise, p. 74.

We need not consider the question of the alleged adequacy of plaintiff's remedy at law, in view of our determination on the question of constitutionality.

This brings us to the principal question here involved. Are Secs. 8(d) of the Alaska Statehood Act (Public Law 85–508, 72 Stat. 339, 48 U.S.C.A. 1959 Supplement, p. 8) and Sec. 3 of the Alaska Omnibus Act (Public Law 86–70, 73 Stat. 141, Title 48 U.S.C.A. 1959 Supplement, p. 14) constitutional?

Sec. 8(d) reads as follows:

"Upon admission of the State of Alaska into the Union as herein provided, all of the Territorial laws then in force in the Territory of Alaska shall be and continue in full force and effect throughout said State except as modified or changed by this Act, or by the constitution of the State, or as thereafter modified or changed by the legislature of the State. All of the laws of the United States shall have the same force and effect within said State as elsewhere within the United States. As used in this paragraph, the term 'Territorial laws' includes (in addition to laws enacted by the Territorial Legislature of Alaska) all laws or parts thereof enacted by the Congress the validity of which is dependent solely upon the authority of the Congress to provide for the government of Alaska prior to the admission of the State of Alaska into the Union, and the term 'laws of the United States' includes all laws or parts thereof enacted by the Congress that (1) apply to or within Alaska at the time of the admission of the State of Alaska into the Union, (2) are not 'Territorial laws' as defined in this paragraph, and (3) are not in conflict with any other provisions of this Act."

Sec. 3 reads as follows:

"Any Territorial law, as that term is defined in section 8(d) of the Act of July 7, 1958 (72 Stat. 339, 344), providing for the admission of the State of Alaska into the Union—

"(a) which provides for the regulation of commerce within Alaska by an agency of the United States, and

"(b) the application of which to the State of Alaska is continued solely by reason of such section 8(d), shall cease to apply to the State of Alaska on June 30, 1961; or on the

effective date of any law enacted by the Legislature of the State of Alaska which modifies or changes such Territorial law, whichever occurs first."

We are also concerned with Article XV, Section 1 of the Alaska Constitution, which reads as follows:

"*Continuance of laws.* All laws in force in the Territory of Alaska on the effective date of this constitution and consistent therewith shall continue in force until they expire by their own limitation, are amended, or repealed."

By their considered acceptance, the people of Alaska, through their delegates to the Territorial Constitutional Convention, envisaged the maintenance of "Territorial laws" through the period of transition between the occurrence of Statehood and the passage of complete and adequate State laws for the control of State affairs.

In the Alaska Statehood Act, enacted by the Congress of the United States on July 7, 1958, those acts of Congress "the validity of which is dependent solely upon the authority of the Congress to provide for the government of Alaska prior to its admission" were classified, carefully and specifically, as "Territorial laws." Such laws continue in full force and effect throughout the state until such time as the new state might act through its legislature, provided it had not already acted through constitutional enactment. There is no question but that the authority for the regulation of intrastate air commerce by the Civil Aeronautics Board is authorized, if at all, solely by such "Territorial laws." We hold that Sec. 401(a) of the Federal Aviation Act of 1958 is such a law.

After the passage by the Congress of the Alaska Statehood Act, the people of Alaska, through a statewide referendum on August 26, 1958, ratified the Statehood Act in the following language:

"All provisions of the Act of Congress approved July 7, 1958 * * * are consented to fully by said State and its people." Sec. 8(b) (3).

The State of Alaska came into being by Presidential Proclamation on January 3, 1959, (48 U.S.C.A. 1959 Supplement, p. 22; Proclamation Number .3269). Thereafter the first Alaskan State Legislature considered the advisability of passing a bill providing that the state immediately take control of the regulation of intrastate air commerce. The Alaskan Legislature, in its wisdom, saw fit by concurrent resolution to delay any such enactment and authorized its Commissioner of Commerce to study the matter of air regulation. Senate Concurrent Resolution No. 12, S.L.A.1959, p. 370.

In its second legislative session the Alaskan Legislature considered the necessity and advisability of its regulating intrastate air commerce. The legislature was aware of the existing regulation by the Civil Aeronautics Board. It passed a statute bringing the state regulation of intrastate air commerce into existence (Chapter 161, S.L.A.1960). Significantly such legislation provided that state regulation was to become effective as of January 1, 1961.

Whether this action of the Alaskan Legislature was in response to the action of the United States Congress in passing the Alaska Omnibus Act effective June 25, 1959, we need not determine. Secs. 3(a) and (b) of that act provided that the regulation of commerce by an agency of the United States, the application of which is continued solely by reason of the provisions of Sec. 8(d) of the Statehood Act and the definition contained therein of "Territorial law," should terminate on June 30, 1961, unless the State of Alaska previously thereto had determined to assume the burden of such regulation. Thus both the Congress of the United States and the Alaskan Legislature believed that the Civil Aeronautics Board had regulative authority over Alaskan intrastate commerce at that time.

But plaintiff urges that such regulation was unconstitutional, first because it is not clear what the phrase "all laws in force in the Territory of Alaska" means, as used in Article XV, Section 1

of the Alaska Constitution, and secondly because the provisions of Sec. 8(d) of the Statehood Act prevent the admission of Alaska into the Union on an equal footing with other states. Here the plaintiff relies largely on Coyle v. Secretary of State of Oklahoma, 1911, 221 U.S. 559, 31 S.Ct. 688, 55 L.Ed. 853.

 We cannot read Coyle as dispositive of the issue. We agree that under Coyle, and under the cases discussed in some detail therein, as well as those cases since determined by the Supreme Court, no state can be deprived of any "attributes of power essential to its equality with other states." The essence of the power of statehood must be maintained without impairment by any condition of admission, compact, or agreement. A state cannot be restricted in its legislative power in respect of any matter which is not plainly within the regulatory power of the national government. "Each state must be competent to exercise that residuum of sovereignty not delegated to the United States by the constitution." What is prohibited is not *all* conditions, compacts, or stipulations, but only those which would not be valid and effectual if the subject of Congressional legislation after the state's admission.

Here we find no deprivation of any of Alaska's power. She could and can terminate the regulation of intrastate air commerce by the Federal Government at any time she chooses to act.

Alaska has ceded no power whatsoever to the Federal Government. To "cede" implies an irrevocable separation; here a temporary separation is revocable at Alaska's will.

One state may contract in its sovereign capacity with another state or with the Federal Government through the Congress " 'if the essence of their statehood is maintained without impairment.' " Warm v. City of Cincinnati, 1937, 57 Ohio App. 43, 11 N.E.2d 281, 284. Here no impairment of the essence of Alaska statehood can be found. Cf. Steward Machine Co. v. Davis, 1937, 301 U.S. 548, 597, 57 S.Ct. 883, 81 L.Ed. 1279; Carmichael v. Southern Coal & Coke Co., 1937, 301 U.S. 495, 525, 57 S.Ct. 868, 81 L.Ed. 1245. See also Ketchikan Packing Co. v. Seaton, 1959, 105 U.S.App.D.C. 383, 267 F.2d 660.

For a state to permit another legal entity, for the sake of convenience, to perform certain of the functions it proposes later to perform itself after the transitional period is complete does not mean that the state acts unconstitutionally, provided always it retains its absolute right to exercise its sovereignty in all those areas not surrendered to the federal Union when it becomes a state. The people of Alaska have surrendered no sovereignty in permitting the Civil Aeronautics Board for a time to regulate its intrastate air commerce.

The temporary restraining order heretofore granted is dissolved. Plaintiff's motions for preliminary injunction and for summary judgment are denied, and defendants' motion to dismiss the action is granted.